```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___3/5/2025___
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DONNA CORNETT, Individually and on Behalf of J.B.,

Plaintiff,

-against-

DAVID C. BANKS, et al.,

Defendants.

---

23-CV-06893 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiff Donna Cornett ("Plaintiff") brings this action individually and on behalf of her

minor child J.B. against Defendants the New York City Department of Education (the "DOE")

and David C. Banks, in his official capacity as Chancellor of the DOE.[1] (together, "Defendants")

alleging that J.B., a student with special needs, was denied a Free and Appropriate Public

Education (a "FAPE") for the 2022–2023 school year and seeking to overturn the decision of the

State Review Officer ("SRO") that determined a FAPE was provided.  Now before the Court are

the parties' cross-motions for summary judgment.  *See* Dkt. Nos. 25, 27 ("Plaintiff Mot."), 34, 35

("Defendants Mot.").  For the reasons set forth herein, Defendants' motion for summary

judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED.

**BACKGROUND**[2]

J.B. is a ten-year-old student with traumatic brain injury, as classified by the Committee

on Special Education ("CSE"), and several other severe medical conditions, including Lennox-

---

[1] Since the filing of this motion, Mr. Banks has resigned and the current DOE Chancellor is
Melissa Aviles-Ramos.  Nothing about this change in personnel affects the outcome of this motion.

[2] The Court's account of the underlying facts is derived from the submissions in support of and in
opposition to parties' respective cross-motions for summary judgment—specifically, the Certified

Gastaut Syndrome, Hirschsprung's Disease, cerebral palsy, hypoxic ischemic encephalopathy, and cortical visual impairment.  J.B. is tracheostomy-dependent, G-tube fed, non-verbal, non-ambulatory, and relies on support for all activities of daily living.  J.B.'s medical conditions result in significant impairments to her cognition, language, memory, attention, reasoning, abstract thinking, judgment, problem-solving, sensory and perceptual abilities, psychosocial behavior, physical functions, information processing, and speech, all of which adversely affect J.B.'s educational performance.  Since 2018, J.B. has been enrolled in the International Institute for the Brain ("iBRAIN"), a private school placement selected by her parents, where she receives direct and small-group instruction together with individual occupational therapy, physical therapy, speech-language therapy, vision education services, and music therapy.

On January 7, 2022, the CSE convened to develop an Individualized Education Program ("IEP") for J.B. for the 2022–2023 school year.  In its IEP, the CSE recommended a 12:1+(3:1) class size in a specialized school with related services, and recommended placement at P.S. Q256.  J.B.'s parents were present at the CSE meeting and expressed disagreement with the

---

Administrative Record, Dkt. Nos. 22-1–14 ("CAR"), Plaintiff's Local Rule 56.1 statement of material facts, Dkt. No. 26 ("Plaintiff 56.1"); Defendants' Local Rule 56.1 counterstatement, Dkt. No. 37 ("Defendants Counter 56.1"), and additional statement of material facts, Dkt. No. 36 ("Defendants 56.1"); Plaintiff's Local Rule 56.1 counterstatement of material facts, Dkt. No. 39 ("Plaintiff Counter 56.1"); the Impartial Hearing Officer decision, CAR at R0032–75 ("IHO Decision"); and the State Review Officer's decision, CAR at R0012–31 ("SRO Decision").  Although the parties did not file a joint statement of agreed-upon facts, many of the relevant facts are undisputed.  Where facts stated in a party's 56.1 Statement are supported by testimonial or documentary evidence, and denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts to be true.  *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id*. at 56.1(d) ("Each statement by the movant or opponent . . . denying and controverting any statement of material fact[ ] must be followed by citation to evidence which would be admissible and set forth as required by Fed. R. Civ. P. 56(c).").  No further citations to these documents will be provided herein unless specifically quoted or referenced.

recommended class size. J.B.'s parents rejected the proposed school placement on the grounds that they believed P.S. Q256 could not implement the IEP, and unilaterally placed J.B. at iBRAIN for the 2022–2023 school year.

On July 6, 2022, Plaintiff filed a Due Process Complaint ("DPC") alleging that DOE deprived J.B. of a FAPE, that iBRAIN was an appropriate placement for J.B., and that all costs associated with J.B.'s placement at iBRAIN should be fully covered by the DOE. The DPC alleged that the IEP was inappropriate and that, even if appropriate, Q256 could not implement it.

A six-day hearing was held before Impartial Hearing Officer ("IHO") Leah Murphy, concluding on December 8, 2022. IHO Murphy issued her decision on December 21, 2022, finding that DOE had failed to provide J.B. a FAPE because the IEP would not have been implemented by P.S. Q256, but also that J.B.'s parents had failed to show that iBRAIN was an appropriate unilateral placement because they had failed to establish either that J.B. was in regular attendance at iBRAIN or that she was receiving the nursing care mandated by the IEP at iBRAIN. *See* IHO Decision at R0062–65. The IHO also found that even if the placement was appropriate, the equities would not favor reimbursement because of the lack of evidence supporting J.B.'s regular attendance at iBRAIN. *Id.*

Plaintiff appealed the IHO Decision. The DOE also cross-appealed, arguing that the IHO erred by finding a FAPE was not provided. State Review Officer ("SRO") Justyn Bates was assigned to the appeal and issued a decision on April 5, 2023. *See* SRO Decision. The SRO reversed the IHO Decision in part, concluding that the IHO erred in finding that DOE did not provide a FAPE because the IHO's conclusion that the DOE's proposed school placement could not implement the IEP was impermissibly speculative. *Id.* at R0025 n.14. The SRO declined to

3

review the adequacy or appropriateness of the IEP on the grounds that Plaintiff waived any

objection by failing to appeal. *Id*. at R0024. Because the SRO found that DOE had provided a

FAPE, the SRO Decision did not reach whether the unilateral placement was appropriate, nor if

the equities favored reimbursement. *Id*. at R0030–31.

### PROCEDURAL HISTORY

Plaintiff initiated this action by complaint on August 4, 2023, alleging violations by

Defendants of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*

("IDEA"), New York State's implementing laws and regulations, 8 N.Y.C.R.R. § 200 *et seq.*,

and Article 89 of the New York Education Law, N.Y. Educ. Law § 4401 *et seq.* See Dkt. No. 1

(the "Complaint"). The Complaint sought a reversal of the SRO Decision, payment of J.B.'s

tuition and associated costs for the 2022–2023 school year at iBRAIN, and attorney's fees under

the IDEA's fee-shifting provisions. *Id*. Defendants answered on October 4, 2023. *See* Dkt. No.

11.

On January 21, 2024, Plaintiff submitted the Certified Administrative Record ("CAR")

with a motion to file it under seal, which Judge Lorna G. Schofield, the District Judge then-

assigned to this matter, later granted. *See* Dkt. Nos. 21, 22, 23, 30, 31. Plaintiff moved for

summary judgment on January 31, 2024, *see* Dkt. Nos. 25–27, and Defendants cross-moved for

summary judgment and opposed Plaintiff's motion on February 29, 2024, *see* Dkt. Nos. 34–37.

Plaintiff replied on March 28, 2024, *see* Dkt. Nos. 39, 40, and Defendants replied on April 11,

2024, *see* Dkt. No. 41.

This case was reassigned to the undersigned on February 23, 2024. *See* Dkt. No. 33.

After the briefing on the parties' motions was complete, the Court referred the matter to

Magistrate Judge Valerie Figueredo for a settlement conference. *See* Dkt. Nos. 42, 43. Although

Judge Figueredo conferred with the parties regarding settlement, a settlement conference was not held.

**LEGAL STANDARDS**

**I.      The IDEA Generally**

"The IDEA authorizes the disbursement of federal funds to [s]tates that develop appropriate plans to, among other things, provide a free and appropriate public education ("FAPE") to children with disabilities." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 525 (2d Cir. 2020) (internal references omitted). "To provide a FAPE to each student with a disability, a school district must develop an IEP that is 'reasonably calculated to enable the child to receive educational benefits.'" *Id.* (quoting *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014)).

Parents who wish to challenge the adequacy of their child's IEP can avail themselves of New York's two-tier system of administrative review: first, by filing an administrative due process complaint and requesting a hearing before an IHO; and second, by appealing that officer's decision to a state review officer. 20 U.S.C. §§ 1415(f)–(g); N.Y. Educ. Law §§ 4404(1)–(2). The IDEA permits dissatisfied parents to pursue judicial review of an SRO's decision in, *inter alia*, a federal district court. *Ventura*, 959 F.3d at 526; *see also* 20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3). The district court receives the records of the state administrative proceedings and hears additional evidence if requested. 20 U.S.C. §§ 1415(i)(2)(C)(i)–(ii).

**II.      Summary Judgment in the IDEA Context**

In IDEA cases, the usual summary judgment standards do not apply. *See, e.g., T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (per curiam);

5

*Viola v. Arlington Cent. Sch. Dist.*, 414 F. Supp. 2d 366, 377–78 (S.D.N.Y. 2006).   Instead, summary judgment in IDEA cases is "in substance an appeal from an administrative determination, not a summary judgment." *See Arlington Cent. Sch. Dist. v. D.K. & K.K.*, No. 02 Civ. 2117 (DLC), 2002 WL 31521158, at *7 (S.D.N.Y. Nov. 14, 2002) (quoting *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995)); *accord Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005).   When reviewing administrative decisions under the IDEA, a federal district court considers the record and any additional evidence the parties submit and bases its determination on a preponderance of the evidence.   20 U.S.C. § 1415(i)(2)(C); *T.P. ex rel. S.P.*, 554 F.3d at 252.

"The role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed," and "courts must bear in mind the statutory context and the administrative judges' greater institutional competence in matters of educational policy." *R.E. ex rel. J.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012) (internal references omitted) (citing *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112–13 (2d Cir. 2007)).   Typically, the court "must give due weight to [the administrative] proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *M.H. ex rel. P.H. v. N.Y.C. Dep't of Educ.* ("*M.H.*"), 685 F.3d 217, 240 (2d Cir. 2012) (internal references omitted) (citing *Gagliardo*, 489 F.3d at 113).   But where the challenged administrative determination implicates a pure legal question, the Court owes no deference to the underlying ruling. *See Montalvan v. Banks*, 707 F. Supp. 3d 417, 430 (S.D.N.Y. 2023) (citing *Mrs. B. ex rel. M.M. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1122 (2d Cir. 1997)).

III.    The *Burlington*/*Carter* Test

Parents dissatisfied with a recommended school placement for their child may unilaterally place their child in a private school and seek tuition reimbursement from the district. *See* 20 U.S.C. § 1412(a)(10)(C).  However, parents who choose to place their children in a private school "during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk."  *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993) (citing *Sch. Comm. of Burlington, Mass. v. Dep't of Educ. of Mass.* ("*Burlington*"), 471 U.S. 359, 373–74 (1985)).  In unilateral parental placement cases, DOE may be required to pay for educational services obtained for a student by his or her parent, if (i) the services offered by the board of education were inadequate or inappropriate, (ii) the services selected by the parent were appropriate, and (iii) equitable considerations support the parents' claim.  *See Burlington*, 471 U.S. at 369–74.  These three prongs comprise the so-called "*Burlington*/*Carter*" test.  *See also Gagliardo*, 489 F.3d at 111–14; *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998).  The party who requests an impartial hearing—in this case, Plaintiff—bears the burden of proving all three prongs of the Burlington test.  *Schaffer v. Weast*, 546 U.S. 49, 62 (2005).

In addressing the first prong of the *Burlington*/*Carter* test—whether the school district offered the student an appropriate program—a court looks at two factors: (1) whether the student's IEP was developed according to the IDEA's procedural requirements and (2) whether the educational plan set forth in the IEP was reasonably calculated to confer educational benefit on the student.  *Walczak*, 142 F.3d at 129 (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206–07 (1982)).  While school districts are required to comply with all IDEA procedures, not all procedural errors render an IEP legally

inadequate under the IDEA. *A.C. ex rel. M.C. v. Bd. of Educ. of Chappaqua Cent. Sch. Dist.* ("*A.C.*"), 553 F.3d 165, 172 (2d Cir. 2009); *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 381 (2d Cir. 2003). Rather, a FAPE is denied only where the procedural irregularities deprived the student of educational benefits or interfered with a parent's right to participate in decisions regarding their child's program and placement. *See Werner v. Clarkstown Cent. Sch. Dist.*, 363 F. Supp. 2d 656, 659 (S.D.N.Y. 2005). The requirement that the IEP be "reasonably calculated" to provide educational benefits simply means that it must "provide [children with disabilities] with 'meaningful access' to education . . . [and] must be 'likely to produce progress and not regression.'" *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 364 (2d Cir. 2006) (quoting *Walczak*, 142 F.3d at 130, 133). Moreover, where plaintiffs argue that a proposed school placement cannot implement the IEP, the challenge must be more than "mere speculation." *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d. 236, 244 (2d Cir. 2015). To succeed, plaintiffs must prove that the school is "factually incapable of implementing the IEP." *Z.C. v. N.Y.C. Dep't of Educ.*, 222 F. Supp. 3d 326, 338 (S.D.N.Y. 2016).

A reviewing court need not reach the second or third prongs of the *Burlington/Carter* test if it determines that the school district's IEP and school placement is adequate. *M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 66 (2d Cir. 2000); *see also Walczak*, 142 F.3d at 134. The IDEA provides that a request for tuition reimbursement for a unilaterally chosen private school may be reduced or denied "upon a judicial finding of unreasonableness with respect to actions taken by the parents," 20 U.S.C. § 1412(a)(10)(C)(iii)(III), including conduct evincing a lack of intent to enroll their child in public school. *See Thies v. N.Y.C. Bd. of Educ.*, No. 07 Civ. 2000 (RMB), 2008 WL 344728, at *4 (S.D.N.Y. Feb. 4, 2008).

## DISCUSSION

### I.   The SRO Properly Decided a FAPE was Provided to J.B. for the 2022–2023 School Year

It is well-settled in this Circuit that federal courts should defer to a state agency's final administrative decision in matters of educational policy. *A.C.*, 553 F.3d at 171; *Karl ex rel. Karl v. Bd. of Educ. of Geneseo Cent. Sch. Dist.* ("*Karl*"), 736 F.2d 873, 877 (2d Cir. 1984). Deference is due even when "the SRO's decision conflicts with the earlier decision of the IHO" since the former's determination is "the final decision of the state authorities." *A.C.*, 553 F.3d at 171 (internal references omitted) (citing *Karl*, 736 F.2d at 877).

In the initial administrative proceeding in this matter, the IHO concluded that the DOE did not provide J.B. with a FAPE because the DOE did not show that P.S. Q256 could not adequately implement the IEP. *See* IHO Decision at R0050 ("While I find the IEP recommended for J.B. to be appropriate, the Department failed to sustain its burden to show that the IEP would be appropriately implemented at Q 256."). On appeal, the SRO reversed this decision by the IHO, instead finding that DOE had provided a FAPE for J.B.'s 2022–2023 school year, and that Plaintiff's assertions that P.S. Q256 could not implement the IEP were speculative. *See* SRO Decision at R0025 n.14. The SRO did not review the appropriateness of the IEP; although the parents had objected to the IEP below, they did not appeal the IHO's finding that the IEP was appropriate and thus had waived that argument on appeal. *Id.* at R0024. Based on the administrative record, the SRO found that the DOE had not denied J.B. a FAPE for the 2022–2023 school year, and therefore did not find it necessary to reach the second and third prongs of the *Burlington/Carter* test. *Id*. at R0030–31.

Because the SRO concluded that J.B. was offered a FAPE, Plaintiff—whose motion for summary judgment seeks to overturn the SRO's determination—now bears the burden "of

9

demonstrating that the [SRO] erred." *M.H.*, 685 F.3d at 225 n.3.  Because "courts must defer to the reasoned conclusions of the SRO as the final state administrative determination," *id.* at 246, and for the reasons discussed below, the Court finds that Plaintiff has not met her burden showing the SRO erred, the SRO's determination that a FAPE was provided for the 2022–2023 school year is affirmed.

### A.  Plaintiff Waived Her Substantive and Procedural Challenges to the IEP

As a threshold issue, Plaintiff attempts on summary judgment in this Court to re-litigate issues that she failed to raise on cross-appeal before the SRO.  On appeal from the IHO, the SRO explicitly determined that Plaintiff waived the right to challenge the IEP by virtue of failing to dispute the IHO's finding that the IEP was substantively and procedurally adequate.  *See* SRO Decision at R0024.  Specifically, the SRO stated that because J.B.'s parents "did not challenge the IHO's adverse finding that the January 2022 IEP was appropriate either directly in their appeal or in response to the district's cross-appeal [. . .] this determination has become final and binding on the parties and will not be reviewed on appeal."  *Id.*

Rather than accepting the binding determination of the state agency, Plaintiff now asks this Court to "conduct an independent evaluation of the case," because "the absence of a direct parental challenge to the IEP during the administrative process does not constrain the court's ability to provide suitable relief."  *See* Plaintiff Mot. at 10–11.  Aside from a general appeal to equitable principles, Plaintiff provides no justification, in either statute or caselaw, that would justify the Court overturning the SRO's reasoned determination that Plaintiff waived her appeal rights as to the IEP.  *Id.*  And upon reviewing the SRO Decision, the Court also finds no independent basis to conclude the SRO erred as a matter of law in reaching that conclusion.

The Court therefore affirms the SRO's determination that Plaintiff waived her right to challenge the IHO's findings as to the appropriateness and adequacy of the IEP.  *See Hidalgo v.*

*N.Y.C. Dep't of Educ.*, No. 20 Civ. 98 (JGK), 2021 WL 2827037, at *3 (S.D.N.Y. July 7, 2021) (affirming that "SRO properly concluded that any arguments [not raised on appeal] related to the findings made by the IHO were abandoned and those findings became final and binding"); *M.Z. v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 4111 (KBF), 2013 WL 1314992, at *10 (S.D.N.Y. Mar. 21, 2013) ("Plaintiffs were obligated to cross-appeal those issues to the SRO in order to preserve the reviewability of those issues. . . . [P]laintiffs' failure to cross-appeal the IHO's adverse findings waived their right to challenge those of findings.").

Irrespective of this waiver, the Court has independently reviewed Plaintiff's procedural and substantive complaints regarding the IEP and, for the reasons set forth below, finds them unavailing.

### B.  Even if Not Waived, Plaintiff's Procedural Challenges to the IEP Fail

A procedural violation of the IDEA amounts to a denial of FAPE when the violation: (i) "impeded the child's right to a free appropriate public education"; (ii) "significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a free appropriate public education to the parents' child"; or (iii) "caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii).  Plaintiff alleges that DOE procedurally violated J.B.'s right to a FAPE in two ways: first, DOE failed to conduct an appropriate evaluation, and second, DOE failed to conduct an appropriate school tour for J.B.'s parents.  *See* Plaintiff Mot. at 10–16.  As stated above, these arguments were not raised before the SRO, and Plaintiff has thus waived her right to review in this Court.  Regardless, though, the record shows that the IEP was procedurally sufficient.

First, in forming the evaluation, the CSE reviewed numerous documents in J.B.'s medical and educational record in addition to conducting specific observations of J.B. and reaching conclusions from those observations.  These resources, documents, and analyses

11

included: (1) a psycho-educational evaluation dated December 13, 2021; (2) a Social History

Update dated December 9, 2021; (3) an iBRAIN teacher and related service report dated

December 16, 2021; (4) J.B.'s 2021 IEP; (5) the 20-21 MAF nursing services Forms; (6) J.B.'s

Quarterly Progress Reports dated December 16, 2021; (7) informal observations of J.B.'s

abilities (rather than formal tests, due to the severity of J.B.'s cognitive impairments); and

(8) reports from J.B.'s educators and support staff regarding her abilities and needs. *See*

Defendants Mot. at 9–10 (collecting record citations).  Courts in this District have repeatedly

found similar evaluations procedurally proper under the IDEA. *See, e.g.*, *J.F. v. N.Y.C. Dep't of*

*Educ.*, No. 12 Civ. 2184 (KBF), 2012 WL 5984915, at *7 (S.D.N.Y. Nov. 27, 2012).  Indeed,

"[t]he IDEA requires those formulating a student's IEP to 'review existing evaluation data on the

child, including (i) evaluations and information provided by the parents of the child; (ii) current

classroom-based, local, or State assessments, and classroom-based observations; and (iii)

observations by teachers and related services providers . . . .' . . . It does not require that the team

review every single item of data available, nor has case law interpreted it to mean such." *F.B. v.*

*N.Y.C. Dep't of Educ.*, 923 F. Supp. 2d 570, 581–82 (S.D.N.Y. 2013).  The Court finds no reason

to deviate from these well-settled standards in this case, particularly when Plaintiff did not raise

this issue before the SRO.

Second, Plaintiff's complaint that a proper school tour was not provided is not supported

by the record, and even if true, would not justify a finding of a procedurally deficient IEP.

Under the IDEA, "a school district has no obligation to . . . allow a parent to visit a proposed

school or classroom before the recommendation is finalized or prior to the school year." *E.A.M.*

*v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 3730 (LAP), 2012 WL 4571794, at *11 (S.D.N.Y. Sept.

29, 2012) (internal references omitted) (citing *S.F. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 870

(DLC), 2011 WL 5419847, at *12 (S.D.N.Y. Nov. 9, 2011)); *see also J.C. ex rel. C.C. v. N.Y.C. Dep't of Educ.*, 2015 WL 1499389, at *24 n.14 (S.D.N.Y. Mar. 31, 2015) ("To the extent that Plaintiffs contend that they have a right under the IDEA to visit [the schools], courts have rejected this argument.") (collecting cases), *aff'd*, 643 Fed. App'x 31 (2d Cir. 2016). Furthermore, the record shows that the parents did in fact participate in a virtual school tour where they were able to interact with school administrators, ask questions, and inquire into the school's specific facilities and capabilities to implement J.B.'s IEP. *See* CAR at R0954–58. Although this tour was conducted without video due to technical difficulties, Plaintiff did not follow up to request any additional information. *See id*. at R0965–66. Because J.B.'s parents, including Plaintiff, were provided with information about the school and resources which would have permitted them to make an informed evaluation about P.S. Q256's ability to meet the requirements of J.B.'s IEP, the IEP was not procedurally defective.

### C. Even if Not Waived, Plaintiff's Substantive Challenges to the IEP Also Fail

"[A] school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017). The Supreme Court has emphasized that the touchstone of the substantive evaluation of an IEP is "whether the IEP is *reasonable*, not whether the court regards it as ideal." *Id*. (emphasis in original). Thus, "a school district fulfills its substantive obligations under the IDEA if it provides an IEP that is likely to produce progress, not regression, and if the IEP affords the student with an opportunity greater than mere trivial advancement." *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 195 (2d Cir. 2005) (internal references omitted) (citing *Walczak*, 142 F.3d at 130).

Plaintiff alleges that the IEP substantively failed to provide a FAPE for the sole reason that "it recommends a 12:1+(3:1) class placement," for J.B, which the parents view as

inadequate.  *See* Plaintiff Mot. at 15.  Such a class size is insufficient, Plaintiff claims, because

"J.B. requires a highly structured classroom or corner room with reduced visual and

environmental complexity, adjustable lighting, noise reduction, and minim[al] extraneous

auditory and visual stimulation[.]"  *Id.* (internal references omitted).

This argument fails for three independent reasons.  First, as with Plaintiff's complaints as

to the alleged procedural insufficiency of the IEP, Plaintiff failed to raise this issue on appeal to

the SRO and has thus waived her right to appeal this issue before this Court.  Second, even if

such a waiver had not occurred, the class size recommended by the IEP is not substantively

improper because the Second Circuit has described the 12:1+(3:1) class size as "the most

supportive classroom environment contemplated by the applicable New York regulations."

*Navarro Carrillo v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 2639, 2023 WL 3162127, at *1 (2d Cir.

May 1, 2023).  Third, Plaintiff's complaints that a potential 12:1+(3:1) classroom grouping could

not possibly accommodate J.B.'s needs are conclusory, speculative, and cite to no evidence in

the record for their support.  The Court can reject them for this reason alone.  *See B.M. v.

Pleasantville Union Free Sch. Dist.*, No. 20 Civ. 2192 (KMK), 2021 WL 4392281, at *21

(S.D.N.Y. Sept. 24, 2021) ("[C]ourts in this District have repeatedly rejected grouping claims

like the ones Plaintiffs advance here."); *N.K. v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 1468 (PKC),

2016 WL 590234, at *7 (S.D.N.Y. Feb. 11, 2016) ("Whether or not the [s]tudent is grouped in a

class that is inappropriate for his IEP cannot be known at the time of the parent's placement

decision.").  In contrast to Plaintiff's unsupported arguments, Defendants cite to testimony given

before the IHO in which J.B.'s evaluating doctor determined that the IEP's recommendation was

reasonably suited to encourage J.B.'s educational progression.  *See* Defendants Mot. at 12.

Because Plaintiff both waived her right to appeal this issue and offers no objective evidence that

the IEP's recommended class size would have inhibited J.B.'s development, the Court does not

find that the IEP was substantively insufficient.

> **D. The SRO Correctly Rejected Plaintiff's Challenges to P.S. Q256's Ability to Implement the IEP**

To succeed on a challenge to a prospective school placement, parents must "demonstrate

the school's inability to provide the services as mandated by the IEP." *N.B. ex rel. H.B. v. N.Y.C.*

*Dep't of Educ.*, 711 F. App'x 29, 33 (2d Cir. 2017).  Speculation is not a sufficient basis for a

prospective challenge to a proposed school placement.  *See M.O.,* 793 F.3d. at 244–45.  Rather,

Plaintiff must prove that the school is "factually incapable of implementing the IEP." *Z.C.*, 222

F. Supp. 3d at 338.

Plaintiff argues that P.S. Q256, the proposed placement school, was not able to

implement the IEP's related services or provide a 1:1 paraprofessional. *See* Plaintiff Mot. at 16–

17.  But Plaintiff fails to present a non-speculative allegation that P.S. Q256, which it is

undisputed J.B. never attended, was unable to meet the IEP's requirements.  As is evident from

the SRO Decision, the SRO conducted a thorough and detailed review of the full factual record

and a close analysis of relevant witness testimony, and ultimately determined that "neither the

IHO nor the parents in response to the cross-appeal[] point to any testimony that the assigned

public school site could not implement the related services, as written, in the IEP[.]" *See* SRO

Decision at R0029 (emphasis omitted).  The SRO found that Plaintiff's general claims were

"inherently speculative [in] nature," and that, to the contrary, there was "ample evidence that the

assigned school had the capacity to implement [J.B.'s] IEP as written." *Id.*

Deference to the decision in the administrative record is particularly appropriate when the

administrative officers' review has been thorough and careful, and when the Court's decision is

based solely on the administrative record. *See Walczak*, 142 F.3d at 129; *cf. Frank G.*, 459 F.3d

15

at 367.  In consideration of this deference and finding no reason in the record or in relevant

caselaw to contradict the SRO's well-reasoned decision, the Court affirms the SRO's

determination that Plaintiff did not prove that P.S. Q256 was factually incapable of

implementing the IEP.

*   *   *

For all of the above-stated reasons, the Court finds that the SRO's reversal of the IHO's

initial determination that Plaintiff was denied a FAPE was well-reasoned and correct, and

entitled to deference as the "final decision of the state authorities."  *See M.H.*, 685 F.3d at 241.

II.    **Although Unnecessary for the Court to Consider, the Second and Third Prongs of the *Burlington/Carter* Test Likewise Favor Defendants.**

Because J.B. has not been denied a FAPE, it is unnecessary for the Court to evaluate the

remaining two prongs of the *Burlington/Carter* test: whether the alternative private placement

was appropriate, and whether equitable considerations favor reimbursement.  *See M.C.*, 226 F.3d

at 66.  Regardless, their outcome would not alter the Court's ultimate determination to grant

summary judgment in favor of the Defendants.

In this case, while the SRO Decision did not reach prongs two or three of the

*Burlington/Carter* test, the IHO Decision found that both factors favored Defendants.  *See* IHO

Decision at R0062–65.  For prong two, whether the alternative private placement was

appropriate, the IHO held that Plaintiff had not met their burden to show that iBRAIN was an

appropriate unilateral placement for two reasons: (1) Plaintiff could not show that J.B.

consistently attended iBRAIN, and (2) Plaintiff could not show that iBRAIN had provided a 1:1

nurse as required by the IEP.  *Id*. at R0062–63.

For prong three, whether equitable considerations favor reimbursement, the IHO held that

the equities favored Defendants because Plaintiff put forward no evidence showing J.B. actually

16

attended iBRAIN regularly, such that repayment of tuition, related services, and transportation costs would be justified. *Id*. at R0063–65. Because "courts should defer to the IHO's analysis when considering an issue not reached by the SRO," *C.F.*, 746 F.3d at 77, and the Court finds the IHO's determinations on these remaining prongs to be reasonable, both prongs two and three of the *Burlington*/*Carter* test would favor Defendants and thus not alter the Court's ultimate conclusion if the Court were to consider them.

**CONCLUSION**

For the foregoing reasons, the Defendants' motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED. The Clerk of Court is respectfully directed to enter judgment for the Defendants, TERMINATE all pending motions, and CLOSE this case.

Dated: March 5, 2025
       New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge